1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

9

| F.W.A. HOLDINGS, INC.; F.W. AGGREGATE, INC., | ) | CV F 06-0175 AWI LJO |
|---|---|---|
| Plaintiffs, | ) ) ) | MEMORANDUM OPINION AND ORDER AFFIRMING IBLA DECISION HOLDING NULL AND VOID NINETEEN UNPATENTED MINING CLAIMS |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; GALE NORTON as Secretary of the Interior; BUREAU OF LAND MANAGEMENT; MIKE POOL as State Director of the California State Office of the Bureau of Land Management, | ) ) ) ) ) ) ) | Document #21 |
| Defendants. | ) ) | |

18

19                                    INTRODUCTION

20 `        This is an appeal of a determination by the Interior Board of Land Appeals ("IBLA") that

21 upheld a decision of the Bureau of Land Management ("BLM") declaring null and void 19

22 unpatented mining claims held by plaintiffs F.W. Holdings and F.W. Aggregate, Inc.

23 ("Plaintiffs") for untimely payment of yearly maintenance fees.  The complaint, which was filed

24 on February 26, 2006, seeks declaratory relief to overturn or declare estopped the determination

25 by BLM and IBLA that the nineteen mining claims are void or forfeited.  In the alternative, the

26 complaint seeks compensation for value of the claims Plaintiffs contend were unconstitutionally

27 taken.  Federal question jurisdiction exists pursuant to 28 U.S.C., section 1331.  Venue is not

28 disputed by the parties.

# PROCEDURAL HISTORY

The complaint in the instant action was filed on February 16, 2006.  Plaintiffs filed their "Trial Brief" on October 26, 2006.  Defendants filed their "Opposition to Plaintiffs' Trial Brief" on November 30, 2006.  Plaintiffs filed a reply brief on December 11, 2006, and Defendants filed a sur-reply on December 19, 2006.  On January 5, 2007, the parties presented oral argument.  Pursuant to the court's order, Plaintiffs filed a closing trial brief summarizing their arguments on February 5, 2007.  Defendants filed their closing trial brief on March 16, 2007.

# FACTUAL BACKGROUND

The unpatented mining claims that are the subject of this action are located on federal land in Inyo County, a few miles to the east of the town of Lone Pine.  The primary mining products of the region where the claims are located are high grade dolomite and, to a lesser extent, sand, rock, gravel and quartzite.

Historically, the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.* required claim holders to file an affidavit by December 30 of each year attesting that they had performed at least $100 worth of assessment work on each mining claims during the previous year.  As a result of the Interior and Related Agencies Appropriations Act for Fiscal Year 1993, Pub. L. No. 102-381, 106 Stat. 1374, 1378-79 (1992), a rental fee of $100 per year per claim was instituted in lieu of the assessment work requirement.  The parties do not dispute that this rental fee, later termed a "maintenance fee," of $100 per claim per year was in effect during 2002, and 2003; the years that are at issue in this case.

Defendants United States Department of the Interior, Gale Norton, Secretary of the Interior, BLM, and Mike Pool, State Director of the California Office of the BLM, (collectively, "Defendants") allege that at the times relevant to this action, BLM had promulgated regulations that required "'a non-refundable maintenance fee of $100.00 for each mining claim, mill site, or tunnel site [to be] paid annually on or before September 1 for the subsequent assessment year beginning at 12 o'clock noon on September 1 of that year.'  43 C.F.R. § 3833.1-5(b) (2002)."  Doc. # 22 at 5:19-22.  Further, BLM regulations provide that "'failure to pay the maintenance or

1   locations fees required by §§ 38833.1-7 . . . shall be deemed conclusively to constitute a

2   forfeiture of the mining claim, mill site, or tunnel site.' 43 C.F.R. § 3833.4 (2002)."   Doc. # 22

3   at 5:23-26.  The parties do not dispute the existence or validity of these regulations.

4           The parties agree that the maintenance fees for the 2003 assessment year were due on

5   September 1, 2002.  The timeliness of the posting of payment is governed in part by a "postmark

6   rule" that is specific to issues related to mining claims:

7           *File* or *filed* means being received and date stamped by the proper BLM office.
        For purposes of complying with §§ 3833.1-2, 3833.1-3, 3833.1-5, 3833.1-6.
8           3833.1-7, or 3833.2, a filing or fee required by any of these sections is timely if
        received within the time period prescribed by law, or, if mailed to the proper BLM
9           office, is contained within an envelope clearly postmarked by a bona fide mail
        delivery service within the period prescribed by law and received by the proper
10          BLM State Office by 15 calendar days subsequent to such period, except as
        provided in § 1821.2-2(e) of this title if the last day falls on the day the office is
11          closed.

12  Doc. # 22 at 5:1-5:7, (citing 43 C.F.R. § 3833.0-5(m) (2002) (emphasis added)).

13          Because September 1, 2002, fell on a day when BLM's offices were closed, the above

14  quoted regulation allowed filing of the maintenance fee on or before September 3, 2002.  The

15  same regulation therefore provided that payment of the maintenance fee would be considered

16  timely if payment arrived at the proper BLM address on or before September 18, 2002, in an

17  envelope postmarked on or before September 3, 2002.  BLM received Plaintiffs' 2003 payment

18  for the maintenance fees on October 1, 2002.  Accompanying the payment was a letter explaining

19  that the maintenance fee payment had been mailed on August 26, 2002, to an address Plaintiffs

20  believed was proper, but that turned out was not an address at which BLM received mail.  Also

21  included was "a window envelope with a postmark of '02 09 12' (presumably September 12,

22  2002), mailed from Canada, and bearing the stamp 'attempted, not known.'  The window

23  envelope does not bear any address."  Doc. # 22 at 6:18-24.

24          The complaint states that in early August 2002, Plaintiffs received a BLM publication

25  titled "Mining Claims and sites on Federal Lands."  Plaintiffs allege the publication included a

26  inserted sheet with a stamped imprint indicating the California State Office of BLM was located

27  at 2135 Butano Drive, Sacramento, CA (the "Butano Drive address").  The complaint states the

28
                                                    3

1    first attempted maintenance fee payment was mailed timely to the Butano Drive address and

2    returned undelivered on or about September 11, 2002.  The complaint alleges a second attempt

3    was made to the same address.  After the second delivery attempt failed, Plaintiffs had the

4    maintenance fee payment courier-delivered to the BLM office which was actually located at 2800

5    Cottage Way, Sacramento (the "Cottage Way address").  Plaintiffs state that they had mailed the

6    maintenance fee payment for the previous year to the Butano Drive address and that the payment

7    had been delivered.  BLM returned Plaintiffs' check and paperwork and notified Plaintiffs that

8    the payment was being considered untimely filed.

9         On November 1, 2002, BLM issued a decision declaring Plaintiffs' nine mining claims

10   forfeited and null and void.  Plaintiffs timely appealed BLM's decision to the IBLA.  In its

11   decision sustaining BLM's revocation of the mining claims, the IBLA noted that BLM testified

12   that instructions for filing the 2003 maintenance fee was mailed to all claim-holders, including

13   Plaintiffs.  The instruction "clearly state[d] that payments should be mailed to ' the Bureau of

14   Land Management, California State Office, 2800 Cottage Way, Rm. W-1834, Sacramento CA,'

15   and, in capital letters states, 'Be alert! Filing requirements are subject to change!'" F.W.A.

16   Holdings v. BLM, 167 IBLA 93, 95 (2005).  The IBLA also noted that the letter to claim-holders

17   very specifically stated that claim owners are responsible for keeping themselves informed of

18   "changes in the filing requirements and mining laws."  The claim-owner is encouraged to contact

19   the BLM office periodically to stay up to date.  Id.  BLM alleges these instructions were mailed

20   during the week of June 3, 2002.  Id.  Plaintiffs do not dispute this instruction was received by

21   them.

22        The IBLA decision also noted that BLM testified that the pamphlet described by Plaintiffs

23   was available on request, but was a general informational pamphlet for the public and contained

24   no information on the filing of yearly maintenance fees.  BLM also provided testimony and

25   evidence that the subject pamphlet did contain the proper Cottage Way address and disputed

26   Plaintiff's allegation that a pamphlet allegedly mailed in 2002 would have contained an insert

27   indicating the Butano Drive address.

28
                                                  4

1

2                                    **LEGAL STANDARD**

3          The parties generally agree that judicial review of BLM's action is governed by the

4  Administrative Procedures Act ("APA").  Pursuant to the provisions of the APA as codified at 5

5  U.S.C. § 706, an agency action may only be set aside if it is "'arbitrary, capricious, an abuse of

6  discretion, or otherwise not in accordance with law.' [Citation.]" <u>Wilderness Soc'y v. United</u>

7  <u>States Fish & Wildlife Serv.</u>, 316 F.3d 913, 921 (9th Cir. 2003).

8          The scope of review under the "arbitrary and capricious" standard is narrow and a
           court is not to substitute its judgment for that of the agency.  Nevertheless, the
9          agency must examine the relevant data and articulate a satisfactory explanation for
           its action including a "rational connection between the facts found and the choice
10         made."  In reviewing that explanation [the court] must "consider whether the
           decision was based on a consideration of the relevant factors and whether there
11         has been a clear error of judgment."

12  <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43

13  (1983).  "There is a judicial presumption favoring the validity of administrative action."

14  <u>Wilderness Pub. Rights Fund v. Kleppe</u>, 608 F.2d 1250, 1254 (9th Cir. 1979).

15                                    **DISCUSSION**

16         In its decision upholding BLM's decision declaring null and void the unpatented claims,

17  IBLA addressed first whether Plaintiffs filed the 2003 annual maintenance fee in accordance with

18  43 C.F.R. § 3833.0-5(m).  Second, finding the fee was not properly filed, IBLA addressed the

19  question of whether Plaintiffs failure to properly file the yearly fee was a result of false or

20  misleading statements by BLM, such that BLM should be estopped from claiming the fees were

21  improperly filed.  The court considers each issue in the same order.

22  **I. Proper Filing of the Yearly Fee and the Postmark Rule**

23         In their decision appealing the BLM's decision to declare the unpatented claims null and

24  void, the IBLA engaged in a straightforward analysis of Plaintiff's compliance with the

25  applicable filing regulations.  The IBLA noted that the applicable statute has two prongs.  First,

26  the filing must be delivered to the proper office in an envelope postmarked on or before

27  September 1; the date due.  Second, the filing must be received by the *proper* office on or before

28
                                            5

1    the fifteenth day after the date due.  43 C.F.R. § 3833.0-5(m) (2002) (italics added).  The court

2    noted Plaintiffs' filing satisfied neither prong.  First, evidence of a timely postmark is lacking.

3    What Plaintiffs presented was a window envelope indicating no address with a postmark of

4    September 12, 2002, and a note explaining that Plaintiffs' *second* attempt to mail the fee had

5    been unsuccessful.  There was no proffer of an envelope postmarked on or before September 1,

6    2002; only the note explaining that Plaintiffs first unsuccessful attempt had been made on August

7    26, 2002.  Second, it is undisputed that BLM actually received the maintenance fee on October 1,

8    2006; fifteen days after the deadline imposed by the statutory postmark rule.

9         Plaintiff alleges it actually mailed the yearly fee on or about August 26, 2002.  Plaintiffs

10   offered as evidence the payment check which was dated August 26, 2002, that was included in

11   the envelope that arrived at the BLM office on October 1, 2002, and is offered to show that the

12   payment was actually made timely.  Plaintiffs allege BLM and IBLA's decision to not consider

13   the date of the check as proof of timeliness was contrary to the rule established in Anderson v.

14   United States, 966 F.2d 487 (9th cir. 1992), allowing extrinsic evidence to demonstrate

15   compliance with a postmark rule.

16        In Anderson, a taxpayer who lacked a postmarked envelope as proof of timely delivery as

17   required by statute sought to demonstrate by extrinsic evidence she had timely mailed a claim for

18   credit or refund within the statutory 3-year period.  Id. at 489.  The court in Anderson set forth

19   two holdings.  First, the court held that extrinsic evidence in the form of an affidavit attesting to

20   the date and time of delivery, combined with the testimony of an eyewitness to the delivery was

21   allowable to establish the timeliness of delivery notwithstanding the statutory requirement that

22   timely delivery be demonstrated by a postmark on the delivery envelope.  Id. at 491.  Second, the

23   Anderson court held that, where there was a claim by the IRS that the filing was never received,

24   the taxpayer could avail herself of the common-law mailbox rule that raises a rebuttable

25   presumption that a properly and timely mailed document is timely and properly delivered.

26        The IBLA's decision does not appear to directly address Plaintiffs' contentions regarding

27   the applicability of Anderson and it is not entirely clear from either the administrative record or

28                                              6

1   the parties' oral arguments that the issues presented by <u>Anderson</u> were raised to the IBLA.

2   Rather, the IBLA's decision addresses directly Plaintiffs' conformity, or lack of conformity with

3   the filing requirements set forth in 43 C.F.R. § 3833.0-5(m).  The IBLA concluded that it was not

4   clear whether the first prong of the filing rule established by 43 C.F.R. § 3833.0-5(m) was met;

5   that is, there is no clear evidence the maintenance fee was posted before September 3, 2002.  The

6   IBLA held that notwithstanding any uncertainty regarding the first prong, Plaintiffs were

7   nonetheless unable to take advantage of the postmark rule because the record shows indisputably

8   that the payment was not received by "the proper BLM State Office" until October 1, 2002; well

9   after the statutory deadline.

10          The court cannot find IBLA's finding clearly erroneous or contrary to law.  It is important

11  in this discussion to keep in mind that timely filing of the yearly maintenance fee has two

12  components; timely mailing, and delivery to the *proper* address within fifteen days after timely

13  mailing.  Whatever the date of initial mailing, it is undisputed that Plaintiffs' 2003 yearly

14  maintenance fee was not ultimately mailed to the Cottage Way address – that is, the *proper*

15  address – until after September 3, 2002, and was not received at the Cottage Way address until

16  after September 18, 2002.

17          What Plaintiffs seek to establish through the introduction of extrinsic evidence is entirely

18  irrelevant to the question of whether the payment that was received by BLM was mailed timely.

19  What Plaintiffs seek to establish through extrinsic evidence is that a payment that was *not*

20  received by BLM; that is, the fee payment that was allegedly posted on August 26, 2002, to the

21  Butano Drive address,  was posted timely.  Plaintiffs admit, and the evidence clearly indicates

22  that the payment that was received by BLM at the Cottage Drive address was mailed after the

23  deadline of  September 3, 2002, and received by BLM after the fifteenth day after the date due.

24  <u>Anderson</u> does not apply here because Plaintiff's proffer of evidence is not for the purpose of

25  establishing by alternative evidence that a *conforming* mailing was made.  The payment BLM

26  actually received was admittedly hand-delivered after the due date and was received by BLM on

27  a date after the statutory grace period for timely delivery.  Plaintiffs' proffered extrinsic evidence

28

1   would not, if accepted, alter either established fact.  The most Plaintiffs can hope to establish by

2   extrinsic evidence is that the 2003 maintenance fee was timely delivered to the wrong address.

3          Both prongs of 43 C.F.R. § 3833.0-5(m) must be met in order to satisfy the yearly

4   maintenance fee requirement.  That is, there must be (1) timely mailing, and (2) timely delivery

5   to the proper address.  Since the evidence clearly establishes that both prongs were not met

6   (whether or not one prong was met), IBLA was not erroneous or contrary to law in concluding

7   that the payment BLM *did* receive did not conform to the requirements set forth in 43 C.F.R. §

8   3833.0-5(m).  Put bluntly, Plaintiffs filing of the 2003 maintenance fee was late because it was

9   not delivered to the Cottage Way address Plaintiffs' by the statutory deadline.

10         Plaintiffs' case therefore turns on whether BLM is estopped from its claim that the

11  Cottage Way address was the correct address for mailing of maintenance fees in 2002.  Only if it

12  can be held that the Cottage Way address was not properly identified as the proper office or that

13  BLM is estopped from claiming that the Cottage Way office was the proper office for the mailing

14  of the 2003 maintenance fee will Plaintiff's reliance on <u>Anderson</u> be relevant.  The court now

15  turns to Plaintiffs' contentions with regard to the proper address.

**II.  Proper Address**

17         Plaintiffs make two arguments concerning the proper address for the mailing of the 2003

18  maintenance fees.  First, Plaintiffs contend that the Cottage Way address was improperly

19  designated in the Code of Federal Regulations.  Second, Plaintiffs contend that, even if the

20  address was properly designated by regulation, Plaintiffs were affirmatively mislead by BLM's

21  actions and should therefore be estopped from denying that the Butano Drive address was proper.

***A.  Designation of the Proper Address***

23         As Plaintiffs properly point out, 43 C.F.R., section 3833.0-5(m) (2002)[1] requires that the

24  yearly maintenance fee must be mailed to, and received by, the "proper BLM office."  In 2002,

25  43 C.F.R., section 3833.0-5(g) defined the "proper BLM office" as the office "listed in 43 C.F.R.,

---

[1]        All notations of section numbers hereinafter refer to sections of 43 C.F.R. unless otherwise specified.

section 1821.2-1(d) of this title as having jurisdiction over the area in which the claims or sites are located." Plaintiffs contend that section 1821.2-1(d) was deleted in 1999, and that no other section was officially designated by section 3833.0-5(g) as being the "proper office" for purposes of payment of yearly maintenance fees.

Plaintiffs rely primarily on Colantino, 143 IBLA 234 (1998). In Colantino, 43 C.F.R., § 1821.2-1(d) had not been amended to show the relocation of the proper BLM office for mining claims located in Idaho. Id. at 235. The Colantino Appeals Board noted that, at the time in question in that case, the C.F.R. still listed as the "proper address" the address that had been vacated at the time the payment of the yearly fee was due. In Colantino, the Appeals Board held that, where "a BLM office changes its address, yet fails to amend 43 C.F.R. § 1821.2-1(d) to reflect that change, evidence that a mining claimant mailed a maintenance fee [. . .] to that State Office's address listed in that regulation on or before the required date of filing will constitute timely filing of that certification." Id. at 236.

In the instant case, the IBLA noted that:

> . . . while it is true that the regulations in effect at the time of [Plaintiff's] 2003 filing, 43 CFR 3833.0-5(g) (2002) directed readers to 43 CFR 1821.2-1(d), which no longer existed, 43 CFR 1821.10(a) 92002), entitled "Where are the BLM offices located?" clearly and correctly identified the California State Office as located at 2800 Cottage Way, Sacramento, California, since 2001. [Citations.]"

F.W.A. Holdings, 167 IBLA at 100-101.

The IBLA considered Plaintiffs' reliance on Colantino, and differentiated that case from the instant case. In Colantino, 43 CFR 1821.2-1(d) actually listed an incorrect address to which the applicant had timely mailed his filing. In the present case there was no false or misleading listing because section 1821.2-1(d) had been deleted and the correct Cottage Way address was clearly listed in the newly inserted adjacent section, 43 CFR 1821.10(a). The IBLA noted that claim holders are "deemed to have constructive knowledge of pertinent publications in the Federal Register, 44 U.S.C. §1507 (2000), and of information set forth in duly promulgated regulations of the department. Federal Crop Ins. Corp. v. Merrill, 32 U.S. 380 (1947)." F.W.A. Holdings, 167 IBLA at 101.

1   Defendants have appended photocopies of the relevant portions of 43 CFR, §1821, et seq.

2   for the years from 1998 to 2002.  Doc. # 29.  The changes to the relevant sections are readily

3   apparent.  In 1998, section 1821.1-1 described office locations and provided that forms and

4   documents must be filed in the office having jurisdiction over the claim or site.  The subsections

5   of section 1821 described all aspects of the execution and filing of forms.  In 1999, the

6   organization of sections 1821, 1822, and 1823 changed substantially.  Section 1821 was

7   substantially shortened and contained only a list of office address under section 1821.10, as well

8   as limited other general information, such as office hours, in a few subsections.  Section 1822

9   was changed from "Payments and Repayments" to "Filing a Document" and section 1823 was

10  changed from "Proofs and Testimony" to "Payments and Refunds."

11      Of relevance to this case, the former section 1821.2-1, listing office hours and office

12  addresses was deleted in 1999, and section 1821.10 was inserted more-or-less in its place; that is,

13  close to the beginning of the part and listing the office addresses for the state offices.  In 1999

14  and 2000, section 1821.10 listed the Butano Drive address as the state office.  In 2001 and 2002,

15  the Cottage Way address was listed as the address of the state office.

16      After review of the appended copies of the relevant portions of the CFR and the parties'

17  pleadings, the court concludes that the IBLA was not erroneous when it declined to apply

18  Colantino to the present case.  The present case is far removed from the factual situation in

19  Colantino where the portion of the CFR that a party would normally consult for the address of

20  the state office was plainly erroneous.  Here, the changes in the organization of the sections were

21  apparent to even casual inspection and the listing of the proper state office was clearly set forth.

22  Here, unlike Colantino, there is no erroneous or misleading information; only a revision in

23  statutory organization that is readily apparent.  Plaintiffs' place their reliance in this case is on a

24  hyper-technical point.  While 43 CFR 3833.0-5(g) (2002) pointed to a section that was deleted,

25  the deleted section was replaced by a section conveying the same information in essentially the

26  same place with only a slight change in the section number.  This is simply not analogous to the

27  situation in Colantino, where the claim holder was affirmatively directed to the wrong address for

28

10

1  the state office.

2      The court finds the IBLA was not clearly erroneous or contrary to law when it

3  distinguished Colantino from the present case on factual grounds and concluded that 43 CFR

4  1821.10 correctly designated the Cottage Way address as the proper address for submission of

5  the 2003 yearly maintenance fee.

6          **B.  Estoppel Based on Affirmative Misconduct**

7      In addition to the promulgation of allegedly inherently defective, contradictory and

8  confusing regulations, which were discussed above, Plaintiffs allege two additional bases for

9  affirmative misconduct that caused them to reasonably rely to their detriment on misleading

10 statements regarding the proper address for the state BLM office.  First, Plaintiffs allege BLM

11 mailed a pamphlet that contained a sheet of paper indicating the Butano Way address was the

12 proper address purposes of mailing of yearly maintenance fees.  Second, Plaintiffs contend BLM

13 mislead Plaintiffs when BLM accepted the 2002 maintenance fee payment that was mailed to the

14 Butano Drive address even though BLM's physical location had changed to the Cottage Way

15 address.

16     The IBLA set forth the standard it applied to the question of estoppel as follows:

17         Four elements must be present to establish the defense of estoppel: (1) the
           party to be estopped must know the facts; (2) he must intend that his conduct shall
18         be acted on or must so act that the party asserting estoppel has a right to believe it
           is so intended; (3) the latter must be ignorant of the true facts; and (4) [the party
19         claiming estoppel] must rely on the former's conduct to his injury. [United States
           v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir. 1970)] (quoting Hampton v.
20         Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir. 1960). [. . . .] Second we
           have adopted the rule of numerous courts that estoppel is an extraordinary
21         remedy, especially as it relates to the public lands.  Harold E. Woods, 61 IBLA
           359, 361 (1982), [. . . .] Third, estoppel against the government in matters
22         concerning the public lands must be based on affirmative misconduct, such as
           misrepresentation or concealment of material facts.  United States v. Ruby Co.,
23         588 F.2d 697, 703 (9th Cir. 1978) [. . . .].

24 FWA Holdings, Inc., 167 IBLA at 99-100 (parallel citations and footnotes omitted).

25     Plaintiffs dispute the above-cited reference only in that Plaintiffs contend that

26 "affirmative misconduct" does not require deliberate or intentionally misleading statements.

27 Plaintiffs cite Floyd Higgins, et al. 147 IBLA 343, 351 (1999) for the proposition that an

28                                          11

affirmative communication of a false fact, even though inadvertent, may constitute affirmative

misconduct for purposes of application of estoppel if the communication served to conceal the

true facts from the Plaintiff.  The court has reviewed <u>Higgins</u> and notes that <u>Higgins</u> articulated a

legal standard for the application of estoppel that is verbatim identical to the legal standard set

forth in the IBLA's decision in this case.  The court accepts for purposes of this discussion that

Plaintiffs need not show "a calculated effort to deprive [Plaintiffs] of their mining claims."

<u>Higgins</u>, 147 IBLA at 351.  It is sufficient to show any affirmative conduct, even inadvertent

conduct, that operates to conceal the true facts from the Plaintiffs in this case.  <u>Id.</u>

Plaintiffs' estoppel claim turns on the second element of estoppel, listed above  – whether

Defendants intended  that their conduct, including the promulgation of misleading and erroneous

regulations and the mailing of the pamphlet was such that Plaintiffs had a right to believe

Defendants intended that Plaintiffs should send their 2003 maintenance fees to the Butano Drive

address.  "The party asserting estoppel has the burden of proving the elements giving rise to it."

<u>Engquist v. Oregon Dep't Agriculture</u>, 478 F.3d 985, 1007 (9th Cir. 2007).  The question this

court must therefore resolve is whether the IBLA applied the proper standard to all the evidence

offered by Plaintiffs to support their estoppel claim.

The IBLA address Plaintiffs' contentions directly as follows:

> [Plaintiffs] argue that they relied on BLM's alleged 2002 mailing of a pamphlet
> allegedly enclosing an insert noting the incorrect address, and that this reliance
> caused the incorrect and ultimately untimely mailing. [. . .] However. [Plaintiffs]
> have not proven that BLM mailed the pamphlet to them, included an insert
> incorrectly identifying the address of BLM's California State Office, or, in any
> way, engaged in conduct intended to lead [Plaintiffs] to rely and act on
> misinformation.  Moreover, [Plaintiffs] disregard receipt of correct address
> information from BLM, the existence of duly promulgated regulations identifying
> the correct address, and their own constructive knowledge of those regulations.
> Therefore, appellants have failed to prove that BLM misinformed them, that BLM
> intended [Plaintiffs] to rely on misinformation, and that [Plaintiffs] were unaware
> of the truth and relied on alleged misinformation from BLM.

<u>F.W.A. Holdings, Inc.</u>, 167 IBLA at 101.

With regard to the acceptance by BLM of yearly maintenance fees mailed to the Butano

Drive address even though BLM's office had moved to the Cottage Way address, the IBLA

1  concluded:

> Similarly, BLM's acceptance of [Plaintiffs'] 2002 fees, allegedly misaddressed to
> the Butano Drive address, does not constitute affirmative misconduct through
> misrepresentation or concealment that operates to estop BLM from finding
> [Plaintiffs'] filing untimely.  In previous cases, where we have found that
> misrepresentations by BLM rose to the level of affirmative misconduct, BLM
> provided inaccurate or misleading information to mining claimants.  See Rudy S.
> Sutlovich, 139 IBLA 79 (1997); Leitmotif Mining Co., 124 IBLA 344 (1992).  In
> this case [Plaintiffs] attempt to hold BLM responsible for their untimely 2003
> filing because of BLM's alleged failure to notify them of their own mistake in
> using the incorrect address for the California State Office when mailing their
> payment the previous year.  However, BLM's proper acceptance of [Plaintiffs']
> timely 2002 filing does not amount to affirmative misrepresentation or
> concealment and provides no support for appellants claim of estoppel.

Id. at 101-102.

Plaintiffs do not allege they did not receive BLM's directions to submit the 2003

maintenance fee to the Cottage Way address.  Plaintiffs' contention with regard to BLM's

mailing directing payment of the 2003 maintenance fee to the Cottage Way address is essentially

that BLM may not designate the proper address for the BLM's State Office by a mailing.

Plaintiffs contend the proper address may only be designated by regulation; that is, the address

designated by section 3833.0-5, which in 2002 pointed to the deleted section 1821.2-1.  Since

section 3833.0-5 pointed to a section that no longer existed in 2002, Plaintiffs contend there was

no properly designated proper address for the State BLM Office and Plaintiffs could not rely on

BLM's mailing to establish otherwise.  Thus, Plaintiffs' argument that they could not rely on

BLM's mailing collapses into their argument that there was no properly designated State BLM

office in 2002 because the regulations that purported to designate the state office were defective.

The court finds Plaintiffs' argument unpersuasive.  First, as discussed above, the IBLA

concluded the proper address for the State BLM Office was properly designated by the new

section 1821.10, which essentially replaced the former section 1821.2-1 and now occupies the

same position in the revised statutory lay-out as the former section 1821.2-1 occupied.  This

court can find no basis to hold the IBLA's determination that the proper state BLM office was

properly designated erroneous.  As discussed above, Plaintiff's argument is essentially an attempt

to bootstrap a minor technical failure to appropriately update section 3833.0-5 into an invalid

13

1  statutory scheme.  This court finds it has not basis to override IBLA's implied decision that the
2  statutory language set forth in the new section 1821.10 validly designates proper addresses for
3  state BLM offices.

4        Second, the case authority Plaintiffs rely on to make their argument for estoppel
5  undercuts Plaintiffs contention that they could not rely on statements or mailings by BLM to
6  indicate where they should sent their 2003 maintenance fee payment.  Both <u>Higgins</u> and
7  <u>Leitmotif</u> applied estoppel where BLM had made *affirmative* statements that were relied upon by
8  the plaintiffs in those cases to their detriment.  The mailing by BLM to Plaintiffs that indicated
9  that the California State BLM Office was located at the Cottage Way address is exactly the sort
10  of affirmative statement that <u>Higgins</u> and <u>Leitmotif</u> establish Plaintiffs had a right to rely upon.
11  Had Plaintiff relied upon BLM's mailing, Plaintiff could have asserted the defense of estoppel to
12  any assertion by BLM that their proper office address was anything other that what the mailing
13  said.

14        The court also finds the IBLA was not erroneous when it found that BLM's acceptance of
15  Plaintiffs 2002 maintenance fee payment without correcting Plaintiffs' address error did not
16  amount to affirmative misconduct.  While the court finds IBLA is not erroneous in its conclusion
17  that the failure to correct is not an act of *affirmative* conduct or misconduct, this court also finds
18  that Plaintiffs' factual claims are undermined by the notice BLM mailed to Plaintiffs during the
19  week of June 3, 2002, instructing them to mail the 2003 maintenance fee payment to the Cottage
20  Way address.  While neither party avers that the June mailing from BLM was for the express
21  purpose of correction of Plaintiffs' error in addressing their 2002 payment, it is certainly true that
22  the June 3rd mailing would reasonably be expected to have a corrective effect.

23        As the court stated during oral argument, the court's review of a decision by an
24  administrative adjudication body is very narrow.  While the consequences of late or improper
25  filing of the yearly maintenance fee may seem harsh,  the court's review may only apply those
26  standards that guide the administrative adjudication and appeal.  The court has reviewed the
27  IBLA's decision, the evidence submitted, the relevant case authority, and has reviewed and given

28                                        14

consideration to the parties' oral arguments.  The court finds Plaintiffs have not carried their burden to show that the decision of the IBLA declaring null and void the unpatented mining claims was clearly erroneous, contrary to law or arbitrary and capricious.  The court must therefore affirm the IBLA's decision.

THEREFORE, in consideration of the foregoing discussion, the decision of the  Interior Board of Land Appeals in the case of F.W.A. Holdings, Inc., 167 IBLA 93 (2005) is hereby AFFIRMED.

IT IS SO ORDERED.

**Dated:    April 18, 2007**                      **/s/ Anthony W. Ishii**
                                    UNITED STATES DISTRICT JUDGE

15